142 So.2d 767 (1962)
The STATE of Florida Upon the Relation of Walter SLATER, Appellant,
v.
Clyde P. SMITH, O.A. Albritton, Allen D. Nease, A. Ralph Kelly and William S. Green, As and Constituting the Board of Public Instruction of St. Johns County, Florida, Appellees.
No. D-48.
District Court of Appeal of Florida. First District.
June 21, 1962.
Rehearing Denied July 16, 1962.
Upchurch & Upchurch, St. Augustine, for appellant.
David R. Dunham, St. Augustine, for appellees.
PER CURIAM.
This appeal is from a final judgment denying the peremptory writ of mandamus prayed for in the petition filed by appellant, and dismissing the action.
Appellant is the holder of both a Bachelor of Science Degree and a Master's Degree in Administration and Supervision. He has a teacher's certificate for business education subjects issued by the State Department of Education, but has never been certificated as a teacher of physical education.
Appellant first became employed in the public school system of Florida in 1950 as a teacher of typing in the Seventh Grade of a junior high school in St. Augustine. He *768 was later employed as a teacher of the same subject in St. Augustine High School. In addition to his duties as a teacher appellant was assigned the duty of serving as coach and athletic director of the high school football team. For these additional functions appellant's salary as a teacher was supplemented to the extent of $1,000 a year. Since the Summer of 1956 appellant has also been employed on a year to year basis as an instructor of physical education in the summer recreational program conducted by the County School Board. For these duties appellant's salary was further supplemented to the extent of $890.00 for each summer's work. For the performance of his duties as a teacher, appellant was paid the same amount paid other teachers in the school system of St. Johns County holding the same rank and performing the same or similar duties. At the time of the events which gave rise to the institution of this action, appellant was receiving the sum of $5450.00 as salary for ten months of teaching services; a supplement of $1,000 each year for his services as coach and athletic director of the high school football team, and the further supplement of $890.00 each year for his services in the summer recreational program.
After rendering satisfactory service as both a teacher and coach for a period of three years, appellant was granted a continuing contract of employment by the County School Board of St. Johns County in accordance with applicable statute of this state.[1] Appellant's outstanding ability as an athlete and the successful record he has attained as a high school coach is not questioned, but these factors are wholly irrelevant to the legal problems involved on this appeal. The contract recites that appellant is thereby employed as a teacher in the high school of the County at an annual salary to be determined by a salary schedule theretofore and thereafter adopted by the County Board. It is here noted that under the mentioned contract of employment appellant was not employed as a coach or athletic director of the high school football team, nor does the contract purport to include any services which appellant may render from time to time in connection with the summer recreational program.
In the Spring of 1961 appellant advised the County School Superintendent that he intended to resign his position with the School Board and accept similar employment in the State of California or in some other city in Florida. The same information was given to the local press and received widespread publicity throughout St. Augustine and the County. Because of the situation created by appellant's announced intention to resign as teacher and coach of the local high school football team, the County School Board, appellees herein, held a meeting at which they adopted a resolution requesting appellant to submit his formal resignation as a member of the instructional staff of the public school system of that county, and it was also resolved that upon his refusal to do so he be reassigned as a full-time teacher at St. Augustine High School to perform such duties as the administration of the school shall designate. Appellant refused to resign the position then held by him, and he was thereupon assigned as a full-time teacher at St. Augustine High School, but was relieved of further duties as coach and athletic director of the football team, as well as the duties previously performed by him in the summer recreational program.
Because of the action taken by the School Board as herein indicated, appellant instituted this mandamus proceeding claiming that his continuing contract of employment, as well as the applicable statutes of this state, conferred upon him the right to continue as head coach and athletic director of the high school football team and as a member of the instructional staff in the summer recreational program, and that he is entitled to be paid the total amount previously received by him for the performance of all *769 duties rendered as a teacher, a coach and instructor in the summer program. Upon final hearing the trial court found that appellant's continuing contract of employment as teacher does not include a right to continued employment as coach and athletic director of the high school football team, or include the right to continued employment in the summer recreational program as an instructor of physical education. Upon such findings and conclusions the peremptory writ of mandamus was denied and the cause dismissed.
The applicable statute of this state pursuant to which appellant's continuing contract of employment was issued, provides in pertinent parts as follows:
"* * * Effective July 1, 1951, each member of the instructional and administrative staff in each county school system, except in counties operating under local, special or general tenure laws with stated population application, who holds a regular certificate based at least on graduation from a standard four year college, who has completed three years of service in a county of the state and who has been reappointed in such county for the fourth successive year, shall be entitled to and shall be issued a continuing contract in such form as may be prescribed by regulations of the state board; provided, that the period of service provided herein may be extended to four years when prescribed by the county board and agreed to in writing by the employee. Each person to whom a continuing contract has been issued as provided herein shall be entitled to continue in his position or in a similar position in the county at the salary schedule authorized by the county board without the necessity for annual nomination or reappointment until such time as the position is discontinued, the person resigns or until his contractual status is changed as prescribed below * * *."[2]
It is by virtue of the foregoing statute that teachers who are granted continuing contracts of employment acquire what is known as rights of tenure. Their right to continue as a teacher is preserved, and they may not be either dismissed or returned to annual contract status except upon compliance by the County Board of Public Instructions with the requirements set forth in the statute as follows:
"(3) Any member of the instructional staff, including any principal, who is under continuing contract may be dismissed or may be returned to annual contract status for another three years when a recommendation to that effect is submitted in writing to the county board at least three months before the close of school during any year, giving good and sufficient reasons therefor, by the county superintendent, or by the principal if his contract is not under consideration, or by a majority of the county board. In any such case a public hearing by the county board shall be held after ten days written notice, if such hearing is requested in writing by the person under consideration, and any decision adverse to the employees shall be made by affirmative vote of four members of the county board. Any such decision adverse to the employee may, however, be appealed by him in writing to the state board, through the state superintendent, for review, and the decision of the state board shall be final as to sufficiency or insufficiency of its reasons for dismissal or discontinuation of the continuing contract status."[3]
Neither in the statutes of this state, nor in the rules and regulations adopted by the State Board of Education, do we find any prescribed classification of "coach" or "athletic director", for which a teacher in the *770 public school system may be certificated. The statutes containing definitions of the duties and functions to be performed by the instructional personnel of the public school system contain no recognized duties as coach or athletic director.[4]
The trial judge construed the statutes relating to the tenure granted teachers under continuing contracts in the public school system of Florida to apply only to the position for which they are certificated by the State Department of Education, and not to additional duties which may be assigned to a teacher from time to time on a year to year basis for the performance of which their salary as a teacher is supplemented. With this construction we are impelled to agree. It is our conclusion that appellant's rights of tenure apply only to his employment as a teacher for which he held a certificate issued by the State Department of Education. Such tenure under the continuing contract of employment held by appellant does not extend to the right of re-employment as a coach or athletic director. For the same reason appellant's tenure does not extend to the right of being re-employed on a continuing basis in the summer recreational program of the county.
Appellant insists that before the School Board may dismiss him from his position as coach and instructor in the summer program, or discontinue his continuing contract status, he must be accorded the protection granted him by F.S. § 231.36(3), F.S.A., quoted above, which requires a public hearing by the County Board and which authorizes dismissal only for good cause. Appellant's argument would have merit if under the statute and terms and provisions of his contract he acquired rights of tenure to employment as coach and as instructor in the summer recreational program. Having found that appellant possesses no such rights, appellees' action in re-assigning him as a full-time teacher, and relieving him of further duties as coach and instructor in the summer program, did not violate any rights of tenure. It was therefore unnecessary that the Board's action be in compliance with the statute upon which appellant relies.
For the foregoing reasons we conclude that the trial court was correct in denying the peremptory writ of mandamus, and the judgment appealed is accordingly affirmed.
Affirmed.
STURGIS and WIGGINTON, JJ., concur.
CARROLL, DONALD K., C.J., concurs in part and dissents in part.
CARROLL, DONALD K., Chief Judge (concurring in part and dissenting in part).
I feel impelled to dissent from that part of the majority opinion holding that the relator, Walter Slater, as a matter of law is not entitled under Section 231.36, Florida Statutes, F.S.A., to continue in his position as football coach-athletic director or in a similar position. I concur in that part of the opinion pertaining to the summer recreation program.
The pertinent facts established by uncontroverted evidence in the record are: The relator, Slater, who graduated from the University of Tennessee and earned a master's degree at the University of Florida, was employed by the respondent Board in August of 1950 as a classroom teacher, athletic director, and football coach in the high school, and every year since that time has been so employed. At the University of Tennessee he had played on the varsity football team, and after graduation played professional football with the Pittsburgh Steelers. For two years he had served as assistant football coach at North Carolina State College. During his ten years as a football coach in the high school, Slater compiled an enviable record, and one of the *771 respondents testified that he thought it was "a wonderful record."
On September 21, 1953, Slater and the Board entered into a "continuing contract of employment for instructional and administrative or supervisory personnel of public schools," employing Slater as a teacher in the high school and reciting that he held a graduate state teacher's certificate at an annual salary to be determined by a salary schedule heretofore or hereafter adopted by the Board. Paragraphs 7, 8, and 9 of this contract provide as follows:
"7. This continuing contract of employment shall remain in full force and effect from year to year, subject to all the provisions herein set forth, unless modified by mutual consent, in writing, of the Parties hereto, except that members of the instructional and administrative or supervisory personnel may be suspended or removed for cause as provided in Section 231.36(1) and Section 230.23(7) (i), Florida Statutes. This contract may be terminated at any time by written resignation of the Employee submitted not later than four weeks before the close of school, to take effect at the end of any school year, or by the mutual consent of the Parties hereto.
"8. The power of the County Board to suspend or dismiss the Employee for cause, as provided by Law, is in no manner impaired or affected by this contract.
"9. This contract shall not operate to prevent discontinuance of a position as provided by Law (Sections 220.23 (7) and 231.36, Florida Statutes 1949)."
At a meeting of the Board held on June 5, 1961, the Superintendent of Public Instruction of the County recommended that Slater be re-assigned to his position of teacher in the commercial department of the high school with the supplemental duties of football coach and athletic director. The Board rejected this recommendation and adopted a motion that Slater be asked for his resignation and that, if a resignation was not tendered immediately, he was to be re-assigned as a full-time classroom teacher at the high school, his classes and assignment of duties to be determined by the school's administration. The Superintendent advised Slater that his salary under the new assignment would be $5,450.00 plus any state raises in teachers' compensation (as compared with his total salary of $7,400 for the year 1960-1961). The Board gave no reason for relieving Slater of his duties as athletic director, football coach, and his position in the summer recreational program. In a letter of June 7, 1961, Slater declined to resign. At no time has the Board followed the procedure provided for in paragraph (3) of Section 231.36.
It is important to note that the benefits of tenure provided for in Section 231.36, quoted in the majority opinion, are made applicable to "each member of the instructional and administrative staff" who possesses the named qualifications. Section 228.041, which should be read "in pari materia," defines "instructional personnel" as follows:
"(14) Instructional personnel.  Instructional personnel comprises the members of the instructional staff and includes supervisors, principals, teachers, librarians, and others engaged in an instructional capacity in the public schools.
"(a) Principal. * * *
"(b) Teacher.  A teacher, except as otherwise designated, shall be any person employed primarily in an instructional capacity."
As I look at it, the crucial question before us on this appeal is whether Slater in his capacity of football coach is a member of the instructional personnel (as one "engaged in an instructional capacity in the public schools") or is a teacher (as a person "employed primarily in an instructional capacity.") No light is thrown on this interesting question by the provisions of the *772 Tenure Act, which do not expressly mention coaches, nor have I found any decision of an appellate court of this state passing on this question. However, the Supreme Court of Florida did say in the case of In Re Board of Public Instruction of Alachua County v. Scott, 160 Fla. 490, 35 So.2d 579 (1948), "* * * Competitive sports are now a recognized part of the public school program. * * *"
I am unable to find any language in the Tenure Act indicating a legislative intent to restrict the words "teaching" and "instruction" to instruction in the "three Rs" or the other traditional classroom subjects.
In support of his contention, Slater in his brief refers us to one of the definitions of the word "coach" in Webster's New Collegiate Dictionary, second edition, as "an instructor in athletics."
My own views on this subject are as follows: In many of the competitive sports conducted under the public school program, and especially in football, there is much to be taught by the member of the staff in charge to the participating students. Not only must the rules of football be taught by the football coach but also measures to be taken in connection with safety and good health. The alert coach also will no doubt spend much time in teaching the students the rules of good sportsmanship  which will be of much importance to them in their lives after graduation from school. In this aspect a football coach is not only a teacher but a teacher of some of the most important things that can be learned in a school program. From the record before us it appears to me that Slater is in this category of "teacher."
Because of these views I am persuaded that under the law of Florida Slater is entitled to continue in his position of head coach-athletic director or entitled to continue in a similar position in the county at the salary schedule authorized by the Board without the necessity for annual nomination or reappointment until such time as the position is discontinued, until Slater resigns, or until his contractual status is changed in accordance with paragraph (3) of Section 231.36, Florida Statutes, F.S.A. The Board is bound to act pursuant to the provisions of the Tenure Act in dealing with those holding continuing contracts. The situation here is analogous to that in Walker v. State ex rel. Kirton, 153 Fla. 14, 13 So.2d 443 (1943), in which the Supreme Court of Florida said:
"So the question presented is whether or not the Board of Public Instruction can avoid the terms of the Tenure Act and compel a teacher to accept a contract of employment at a reduced salary for reasons of their choosing that are not comprehended in the Tenure Act.
"The law, Section 231.36, Florida Statutes 1941, F.S.A. § 231.36, requires that teachers be certified and that they enter into written contracts with the Board of Public Instruction for the performance of their services. The appellants attempt to give reasons of their own for offering Mrs. Kirton a contract at a reduced compensation but none of the reasons offered are within the terms of the Tenure Act and this is their guide in the premises. The purpose of the Tenure Act was to assure teachers in their employment during competency and good behavior. If the board can side step the Act for the reasons stated here, it becomes nothing more than a dead letter."
I would, therefore, reverse the order appealed from and remand the cause with directions to issue a peremptory writ requiring the Board to reassign Slater to his duties as football coach-athletic director, and as classroom teacher, or assign him to a similar position, unless the Board elects to follow the procedure set forth in paragraph (3) of Section 231.36, Florida Statutes, F.S.A., in accordance with the views I have expressed.
NOTES
[1] F.S. § 231.36, F.S.A.
[2] F.S. § 231.36, F.S.A.
[3] F.S. § 231.36(3), F.S.A.
[4] F.S. §§ 228.041 and 231.09, F.S.A.